[L. A. No. 1182. In Bank.—November 28, 1903.]

SARAH C. CUMMINGS, Appellant, v. W. R. KEARNEY, City Treasurer of Santa Barbara, and U. YNDART, Respondents.

ORDER DENYING NEW TRIAL—REVIEW UPON APPEAL.—Upon appeal from an order denying a new trial, without an appeal from the judgment, the sufficiency of the pleadings and of the judgment, as being the legal conclusion from the facts found, cannot be questioned.

ID.—STREET IMPROVEMENT—SALE UNDER BOND—INJUNCTION—FINDING —WAIVER OF OBJECTION—ESTOPPEL.—Upon appeal from an order denying a new trial, in an action to enjoin the sale of plaintiff's lot under a bond for a street improvement, a finding sustained by the evidence that plaintiff and her predecessor in title, by their conduct, waived objection to the improvement, and acquiesced therein and received the benefit thereof, and consented to and ratified the proceedings, and took no appeal to the city council, and did not object to the bond, nor pay or offer to pay the assessment or bond, or any part thereof, and that plaintiff is estopped by said conduct from obtaining equitable relief, is conclusive of the case.

ID.—REQUEST FOR IMPROVEMENT AND ASSESSMENT—FRAUD UPON BOND-OWNER.—Where it appears that plaintiff's predecessor in title requested the improvement, and requested the superintendent of streets to deliver the assessment and diagram upon the faith of which the work was done, and acquiesced in all the proceedings without objection to any step, his acts and conduct, if allowed to be questioned, would work a fraud upon the owner of the bond which the law will not tolerate.

APPEAL from an order of the Superior Court of Santa Barbara County denying a new trial. W. S. Day, Judge.

The facts are stated in the opinion.

B. F. Thomas, for Appellant.

Thomas McNulta, and Richards & Carrier, for Respondents.

COOPER, C.—This action was brought to enjoin the threatened sale of plaintiff's lot in the city of Santa Barbara for the amount due upon a bond owned by defendant Yndart, which was issued for street-work and improvements upon the

lot now owned by plaintiff. Findings were filed, upon which judgment was entered for defendants. Plaintiff made a motion for a new trial, and this appeal is from the order denying said motion.

As no appeal has been taken from the judgment, the sufficiency of the pleadings and of the judgment as being the legal conclusion from the facts found, cannot be questioned on this record.

The plaintiff's counsel has devoted much of his brief to a discussion of certain alleged irregularities and defects in the assessment, specifications, and contract under which the work was done. From the view we take of the case, it is not necessary to examine nor discuss the regularity of the proceedings by which the lien was created and the bond issued. The property belonged to L. C. Cummings, the husband and predecessor in interest of plaintiff, at all times during the preliminary proceedings leading up to the improvements and issuance of the bond.

The court found: "That plaintiff by the conduct of herself and her predecessor waived any objection to the proceedings connected with said improvement and consented to and accepted and ratified said proceedings, and acquiesced in said improvements and received the benefit thereof, and the benefit received from the issuance of said bond; that plaintiff did not nor did her predecessor appeal to the said council at any time concerning the irregularity or invalidity of any of the proceedings, or in reference to any of the work performed, nor did either of them notify said city treasurer before the issuance of the bond referred to in the complaint, that it was her or his desire that no bond be issued, and the plaintiff has never paid or offered to pay the amount of such assessment or bond or any part thereof, and plaintiff is estopped by reason of said conduct from obtaining any equitable relief from this court in the premises, and no part of said assessment or bond has been paid by any person."

The above finding, so far as it is a finding of facts, and so far as it contains conclusions of law, is supported by the evidence and the probative findings and is conclusive of the case.

There is evidence to show that on the thirtieth day of

September, 1893, the owners of the abutting lots on the street where the improvements were to be made entered into a written contract with one Long, the superintendent of streets, which contract recited the fact that a contract for doing the proposed work had been awarded by the city council to one Newberry; that notice of the award of said contract had been duly published and posted according to law; that the owners had elected to take the said work, and that the time for doing it had not expired. The contract further provided that the said owners should do the work so awarded to Newberry, and contained stipulations as to the specifications and manner in which the work should be done; that upon its completion the superintendent of streets should duly make and issue an assessment and diagram and attach a warrant thereto as provided by law; that the city of Santa Barbara should not be liable for any of the costs of the work. This contract was signed by the property-owners and by plaintiff's predecessor as follows: "L. C. Cummings, by B. F. Thomas, agent." Thomas is the attorney for plaintiff, and was then the attorney for her husband, and his authority for signing the contract was a telegram from Portland, Maine, dated September 29, 1893, as follows: "To B. F. Thomas. I hereby authorize you, as agent, to sign paper contract for street work. Lincoln C. Cummings." The contract contained the proper affidavit that the parties whose signatures were attached were the owners or agents of the owners, and that the frontage set forth in the contract was correct. This affidavit was signed "L. C. Cummings. (Agent) B. F. Thomas." A proper bond was given to the effect that the owners and parties to the contract would faithfully perform the work, which bond was signed in the same manner, "L. C. Cummings. B. F. Thomas, agent." The bond was duly approved. A proper assessment was made, showing in detail the cost of the work, and fixing the rate per front foot. A warrant, certificate of the city engineer, and diagram were made. The warrant stated that serial bonds would be issued to represent the cost of the work, in manner as provided by law, giving the rate of interest, the time they were to run, and a notice that a bond would issue to represent each assessment of fifty dollars or more. This assessment certificate and diagram were

duly recorded February 7, 1894. The following instrument in writing was then made by the property-owners, to wit: "We, the undersigned property-owners on De la Vina Street, between Micheltorena and Islay streets, who entered into the contract for grading, etc., and sewering said portion of De la Vina Street, hereby authorize the superintendent of streets of the city of Santa Barbara to issue and deliver to O. W. Boeseke the assessment and diagram for said work." This authorization was duly signed by the owners and by "L. C. Cummings, by B. F. Thomas, agent."

O. W. Boeseke made the proper affidavit to the contractor's return, showing demand and receipt of payment of portions of the assessment, and that the assessment involved in this action was unpaid as follows: "No. 3. Demand made upon as owners, unknown owner, No. 3. March 7th, 1894, assessment due and unpaid, $473.45."

The above certificate was made at the close of the work. It was here admitted: "That on the twentieth day of March, 1894, the superintendent of streets certified by written instrument to the city treasurer of the city of Santa Barbara a complete list of all assessments which remained unpaid, which amounted to fifty dollars or over upon the assessment and diagram issued for the work of said improvement (being the improvement in question here), upon the lot owned by the plaintiff and amount of assessment unpaid thereon, to wit, $473.45; that plaintiff did not, nor did her predecessor appeal to the city council at any time concerning the irregularity or invalidity of any of the proceedings had in reference to any work performed, nor did either of them notify said city treasurer before the issue of the bond referred to in the complaint that it was her or his desire that no bond be issued; that plaintiff has never paid or offered to pay the amount of such assessment or bond or any part thereof."

It does not appear at what time plaintiff became the owner of the lot, but it seems to be conceded that it was after all the proceedings to which her predecessor in title assented. The action was commenced in August, 1899. It appears clear to us that upon the plainest principles of honesty and fair dealing the plaintiff is estopped by the conduct of her predecessor in title from questioning the validity of the bond for any irregularity in the preliminary proceedings.

L. C. Cummings was a party to the contract and subsequent proceedings. At his request the improvements were made. He received, or is presumed to have received, the benefit of the money expended. He made no appeal to the city council, nor in any way made known his objection to any step in the proceedings. He requested the superintendent of streets to deliver to Boeseke the assessment and diagram upon the faith of which the work was done. His acts and conduct, if allowed now to be questioned, would work a fraud upon the owner of the bond. "Where a man has been silent when in conscience he ought to have spoken he will not be allowed to speak when conscience requires him to be silent." His silence was not the only culpable thing, but the direct acts and requests evidenced by the writings herein set forth. The case of *Callender* v. *Patterson,* 66 Cal. 357, is directly in point. It was there said: "A party cannot for value assign a contract and assessment and then set up the defense that they are invalid because not in compliance with the street law. The law does not tolerate such a procedure."

The views herein expressed are not in conflict with *Union Pav. etc. Co.* v. *McGovern,* 127 Cal. 638. In that case the work had not been done. The court said: "In the agreement between Tucker and the property-owners they do not purport to assign to him an assessment for work that had already been done for them, or any existing obligation in their favor from which a warranty of its validity might be implied; they merely agreed to assign a contract not yet entered into." If the contract under which the work was done authorized the contractor to recover the money, the law authorized the issuance of the bond. The holder of the bond paid the money upon the faith of the prior transactions and is entitled to be protected by them.

We advise that the order be affirmed.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion, the order appealed from is affirmed.

McFarland, J.,    Van Dyke. J.,    Shaw, J.,
Angellotti, J.,    Lorigan, J.,    Henshaw, J.